IN RE CUSTODY OF CARPENTER; CARPENTER, APPELLANT.

(No. 87-CA-3 — Decided June 27, 1987.)

*Alma Puissegur,* for appellant Jeff Carpenter.

*Gary Jessee,* for appellee Lori Carpenter.

*John O. Martin,* for appellees Linda and Floyd Florea.

FAIN, J. Appellant, Jeff Carpenter, seeks to obtain the custody of his son, Anthony Shane Carpenter. Temporary custody presently reposes in the child's maternal grandparents, as a result of an entry to which both the child's father and mother agreed in 1985. The child's mother has not submitted a brief in connection with the father's appeal. Accordingly, we will treat the issues in this appeal as lying exclusively between the father and the grandparents.

At the hearing on the father's motion, the referee applied R.C. 3109.04(B), which pertains to modifications of custody awards, and found that the requisite criteria under that statutory section had not been met in this case. The trial court adopted the referee's report and recommendation over the father's objection. The father appeals, claiming that the trial court's reliance upon R.C. 3109.04(B) resulted in the court's not having given preferential consideration to the appellant as the natural father of the child.

Because we conclude that it was error to have applied R.C. 3109.04(B) to a case in which temporary custody, only, has been awarded to a nonparent, we agree with the father, and the judgment of the trial court will be reversed and the cause will be remanded for further proceedings.

## I

In October 1985, both of the child's parents consented to an order granting custody to the child's maternal grandmother and her husband. Although there was nothing in either the petition for custody or the consent forms executed by the parents to indicate that the award of custody to which the parents were consenting would be temporary, the judgment entry, in its entirety, reads as follows:

"Floyd F. Florea and Lyna [*sic*] M. Florea is/are granted *temporary* legal custody of Anthony Shane Carpenter, pending further order of this Court pursuant to O.R.C. 2151.23(A)(2)." (Emphasis added.)

More importantly, the parents both testified at the hearing in this matter that they understood that only a temporary award of custody was involved at the time that they executed their consents, and the grandparents testified that they understood that the custody awarded to them would only be temporary, because they were under the impression that that was the most that they could obtain at that time.

In August 1986, the father moved to terminate the temporary custody. That motion was heard before a referee, with the child's parents each independently represented by counsel, and with the grandparents represented by counsel. The referee's report and recommendation, which was adopted in its entirety by the trial court, concluded as follows:

"Section 3109.04(B)(1) mandates that the Court shall not modify a prior custody decree unless one of three criteria has been met. In this case, none has been met: 1) the custodians do not agree to a change in custody; 2) the evidence did not establish that Anthony was integrated into Mr. Carpenter's family; further, any integration that might have taken place was not with the consent of the custodians; 3)

the environment provided by Mr. and Mrs. Florea does not significantly endanger Anthony's physical health or his mental, moral, or emotional development. Taking into account the preferential treatment given a natural parent in a custody dispute, a consideration of all the facts still indicates that it is in Anthony's best interest to remain with Mr. and Mrs. Florea."

## II

The central issues in this appeal are embodied in the father's Third and Fourth Assignments of Error, which are as follows:

"Third Assignment of Error

"The court erred in failing to apply the legal principle that a parent has a paramount right to custody of his child as against a non-parent, absent a showing of parental unfitness by a preponderance of the evidence.

"Fourth Assignment of Error

"The court erred in its application of O.R.C. 3109.04(B)(1) to the facts of this case."

The award of custody to the maternal grandparents was expressly denominated as "temporary." Furthermore, it was clear that both parents and the grandparents regarded the custody as temporary in character.

It has been held that R.C. 3109.04(B) has no application to orders of temporary custody. *Schoffner* v. *Schoffner* (1984), 19 Ohio App. 3d 208, 19 OBR 352, 483 N.E. 2d 1190.

*Masitto* v. *Masitto* (1986), 22 Ohio St. 3d 63, 22 OBR 81, 488 N.E. 2d 857, upon which the grandparents rely, is distinguishable. In *Masitto,* custody had been awarded to grandparents by virtue of a court established guardianship, to which the only mentally competent parent of the child had agreed. The guardianship was not denominated as temporary in character. Furthermore, a divorce decree involving

the child's parents entered after the guardianship had been established recognized the existence of the guardianship, and there was nothing in its recognition of the guardianship to suggest that the guardianship was temporary in nature. The Supreme Court applied the tests for modification of a child custody order set forth in R.C. 3109.04(B), holding that: "All of such acts and circumstances reasonably serve as an original award of custody to the guardian, modification of which requires satisfaction of the child's best interest." *Id.* at 67, 22 OBR at 84, 488 N.E. 2d at 861. The Supreme Court recognized that:

"The general rule in Ohio regarding original custody awards and disputes between a parent and a non-parent is that 'parents who are "suitable" persons have a "paramount" right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children.' *In re Perales, supra,* at 97. * * * However, once an original custody award has been made, the general rule is that such award will not be modified unless 'necessary to serve the best interest of the child.' R.C. 3109.04(B)." *Id.* at 65, 22 OBR at 82, 488 N.E. 2d at 859-860.

In *In re Perales* (1977), 52 Ohio St. 2d 89, 6 O.O. 3d 293, 369 N.E. 2d 1047, cited above, a case which also involved an attempt by a parent to reclaim custody from a non-parent, the Supreme Court made a distinction between temporary and permanent custody awards. Although the parent in *Perales* had signed an agreement purporting to give custody of the child to the non-parent (*id.* at 90, 6 O.O. 3d at 293, 369 N.E. 2d at 1048), the Supreme Court noted that:

"The Court of Appeals correctly found that the written agreement between Shirley Perales and Virginia Nino as to Tracy's upbringing was in-

sufficient, under R.C. 3107.06 and 5103.16, to effect Miss Nino's adoption of Tracy or to grant her *permanent* custody of the child." (Emphasis added.) *Id.* at 91, 6 O.O. 3d at 294, 369 N.E. 2d at 1049, fn. 2.

R.C. 3109.04(B), relied upon by both the grandparents and the trial court, imposes a heavy burden to overcome in seeking to persuade a court to modify a prior custody decree. R.C. 3109.04(B)(1) provides, in pertinent part, as follows:

"* * * In applying these standards, the court shall retain the custodian * * * designated by the prior decree, unless one of the following applies:

"(a) The custodian * * * agree[s] to a change in custody.

"(b) The child, with the consent of the custodian * * *, has been integrated into the family of the person seeking custody.

"(c) The child's present environment endangers significantly his physical health or his mental, moral, or emotional development and the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

On the other hand, as between a parent and a non-parent, a parent may be denied custody only if a preponderance of the evidence indicates abandonment, contractual relinquishment of custody, total inability to provide care or support, or that the parent is otherwise unsuitable — that is, that an award of custody to the parent would be detrimental to the child. *In re Perales, supra,* at 98, 6 O.O. 3d at 297,

369 N.E. 2d at 1052. Where a parent is seeking to modify a prior award of custody to a non-parent, this requirement of parental preference comes into potential conflict with the statutory burdens imposed upon the party seeking to change custody.

We conclude, based upon our reading of *In re Perales, supra,* and *Schoffner, supra,* that this apparent conflict may be resolved by holding that R.C. 3109.04(B) has no application where a parent is seeking to extinguish an award of *temporary* custody to a non-parent in order to re-establish custody of the child. The parent, being the natural custodian of the child, starts with the benefit of the preferential considerations mandated by *In re Perales, supra,* as a natural right. See *id.* at 96-97, 6 O.O. 3d at 296-297, 369 N.E. 2d at 1051, fn. 9. The parent should only be deemed to have surrendered his natural right to preferential treatment *vis-a-vis* a non-parent if he does so knowingly and intelligently. An agreement to surrender *temporary* custody is not a knowing and intelligent surrender of the parent's natural right to preferential treatment in a subsequent determination of custody.[1]

We note that in his brief the father has conceded the applicability of R.C. 3109.04(B)(1) to this case. We conclude that this concession is contrary to law since we hold that R.C. 3109.04(B)(1) does not have application to a parent's motion to extinguish an award of custody to a non-parent that is temporary both in its denomination and in terms of the length of time elapsing between the award and the parent's motion to

---

[1] In the case before us, the father filed his motion to terminate temporary custody less than ten months after temporary custody had been awarded to the grandparents with the consent of the parents. Our holding in this case is necessarily limited to the particular facts and circumstances of this case. A longer interval between a consensual award of "temporary" custody and the parent's attempt to terminate that award might be deemed to surrender, as a result of the passage of time, the parent's right to preferential treatment.

terminate the award. In any event, the father does argue, in connection with his Third Assignment of Error, that the trial court failed to accord him preferential treatment, as required by *In re Perales, supra,* and, in our view, it is the trial court's erroneous consideration of the factors listed in R.C. 3109.04(B)(1) that has resulted in the trial court's not having given sufficiently preferential consideration to the father as the natural parent of the child. By virtue of his Third Assignment of Error, then, the father has preserved this issue for review, notwithstanding his concession of the applicability of R.C. 3109.04.

Appellant's Third and Fourth Assignments of Error are sustained, the judgment of the trial court will be reversed, and this cause will be remanded for a threshold determination, in accordance with *In re Perales,* whether a preponderance of the evidence indicates total inability to provide care or support or that the father is otherwise unsuitable—that is, that an award of custody would be detrimental to the child.

### III

The father's First and Second Assignments of Error are as follows:

"First Assignment of Error

"The court erred when it found, as a matter of fact that '(T)he child has resided in the Florea home for almost five years of his life,' a fact on which it relied in making its decision.

"Second Assignment of Error

"The court erred when it found, as a matter of fact, that 'the parents were separated for approximately three years prior to their dissolution of marriage in the state of Montana on April 18, 1985,' a fact on which it relied in making its decision."

Both of these assignments of error involve specific findings of fact that it is claimed that the referee relied upon in making his decision. In view of the fact that, as a result of our disposition of the Third and Fourth Assignments of Error, we are remanding this cause for a new hearing, it is premature to determine the correctness of these findings of fact. Appellant's First and Second Assignments of Error are overruled at this time, without prejudice.

### IV

"Fifth Assignment of Error

"The court erred in failing to apply O.R.C. 3109.04(C) to the facts of this case."

In *In re Perales, supra,* the Supreme Court has distinguished between divorce custody proceedings involving disputes between two parents, which are governed by R.C. 3109.04, and custody proceedings pursuant to R.C. 2151.23(A) between a parent and a non-parent. For the same reasons set forth in our analysis of appellant's Third and Fourth Assignments of Error, and based upon the distinction laid out in *In re Perales,* we hold that R.C. 3109.04(C) does not apply in the circumstances in this case. We note, however, that the factors set forth in R.C. 3109.04(C) would seem to be appropriate factors to consider in connection with the determination required by *In re Perales*: that is, whether the father is totally unable to provide care or support, whether he is otherwise unsuitable, and underlying both of these, whether an award of custody would be detrimental to the child. Accordingly, even though we hold that the trial court is not specifically required to consider the factors enumerated in R.C. 3109.04(C), they are certainly factors that the trial court may, in its discretion, consider in connection with the determination required by *In re Perales.*

Appellant's Fifth Assignment of Error is overruled.

## V

Appellant's Third and Fourth Assignments of Error having been sustained, the judgment of the trial court will be reversed and this cause will be remanded for a determination pursuant to *In re Perales, supra,* whether a preponderance of the evidence indicates the father's total inability to provide care or support, or that he is otherwise unsuitable—that is, that an award of custody to the father would be detrimental to the child.

Our holding that R.C. 3109.04(B) and (C) do not apply is limited strictly to the proceedings to determine whether the grandparents' temporary custody of the child should be terminated. From the briefs, it appears that the mother was awarded custody of the child by the court in Montana that dissolved the marriage, a few months before both parents consented to the maternal grandparents' being given temporary custody, and that the award of custody to the mother, *vis-a-vis* the father, was not temporary in nature. If that is so, then the father's efforts to obtain a change of custody from the child's mother to himself, if he were to succeed in getting the grandparents' temporary custody terminated, *would* be governed by R.C. 3109.04(B), and R.C. 3109.04(C) would also apply.

*Judgment reversed and cause remanded.*

WILSON and WOLFF, JJ., concur.